HADLEY, Respondent, vs. STEWART, imp., Appellant.

*February 25 — March 16, 1886.*

Deed: Mortgage: Redemption: Improvements.

1. Findings of the trial court to the effect that after a warranty deed of land had been given to secure the repayment of a loan, a quit-claim deed between the same parties was given, not as a release of the equity of redemption, but as security for subsequent advances, and that the defendant had notice of such facts when he purchased the land, are *held* to be sustained by the evidence.

2. When the possession of land is recovered from one who has made improvements for which he is entitled to recover, he should be charged with the rental value of the premises without the improvements, and be allowed for the value of the improvements without interest.

3. In an action to redeem land as from a mortgage it appeared that when the defendant purchased he was chargeable with notice of the equity of redemption, but that there was no want of good faith in the assertion of his title as against the owner of such equity. It also appeared that the plaintiff was present, but did not openly assert his claim, when the defendant took possession, and that he suffered the latter to expend considerable sums in making improvements before making any objection. *Held*, that the defendant had the right, after the action was commenced, to finish improvements already begun, so as to make them useful, and that upon the redemption he might recover the value of the improvements made up to the time of the announcement of the decision of the court in the action. *Witt v. Trustees*, 55 Wis. 376, distinguished.

APPEAL from the Circuit Court for *Green Lake* County.

The facts will sufficiently appear from the opinion. From a judgment in favor of the plaintiff the defendant *Stewart* appealed.

For the appellant there was a brief by *Geo. D. Waring*, and oral argument by *Perry Niskern*.

For the respondent there was a brief by *Jackson & Thompson*, and oral argument by *Mr. Jackson*.

TAYLOR, J.   The respondent brought this action against Miller and *Stewart* for the purpose of having a certain quitclaim deed given by the respondent and his wife to Miller, bearing date the 17th of May, 1880, conveying to him certain lots in the city of Berlin, declared to be a mortgage, and to permit the respondent to redeem the premises from said mortgage.   *Stewart* is made a party defendant, because, after the deed was given to Miller, and before the commencement of this action, Miller had conveyed the same lots to *Stewart* for a valuable consideration, by warranty deed dated on the 16th day of June, 1880, and *Stewart* had entered into the possession of said lots, claiming to own the same in fee.

The complaint charges that the quitclaim deed was given to secure money owing from the plaintiff to said Miller, and alleges that he was to have six months after the date of the deed to pay such indebtedness.   It also charges that *Stewart* had notice that the quitclaim deed was in fact a mortgage when he purchased from the defendant Miller.   The complaint also shows that on the 1st of May, 1878, the plaintiff and his wife had conveyed the same lots to Miller by warranty deed of that date which had been duly recorded.   It is alleged by the plaintiff, and admitted by all parties, that this deed was given, not to convey the absolute title to the defendant Miller, but as a mortgage to secure to him the payment of about $212, which plaintiff owed Miller for money before that time loaned to him. Plaintiff claims that Miller had advanced to him more money after the date of the warranty deed, and that Miller required him to give the quitclaim deed to cover such advances, but with the express agreement that if he paid the original debt of $212, and the subsequent advances, within six months after the quitclaim deed was executed, Miller would reconvey the lots to him.   Miller claims the quitclaim deed was given as a release of the plaintiff's equity of redemption

under the warranty deed of May 1, 1878, and that the giving of the quitclaim deed was a final settlement between them for the money first advanced, of $212, and for all money thereafter advanced by Miller to the plaintiff.

On the trial the circuit court held, upon all the evidence, that the quitclaim deed was not given as a release of the plaintiff's equity of redemption under the deed of 1878, but as a mortgage to cover the subsequent advances; and that it was agreed between him and Miller that he should have six months after the date of such deed to pay the whole sum due from plaintiff to Miller, and that if it was so paid Miller should reconvey to the plaintiff. Without commenting upon the evidence, we think it supports the finding of the court. At all events, there is no such preponderance of evidence against such finding as would justify this court in reversing 'it upon this appeal.

Upon the evidence the circuit court also found that the appellant *Stewart*, at the time of his purchase, and when he took possession under his deed from Miller, had full notice of the rights of the plaintiff, as claimed by him. The only evidence bearing on this question found in the record is the admission of the appellant that he knew the warranty deed was given, in fact, as a mortgage; and the testimony of the witness Ellis, who says that, about a week before the appellant purchased the property from Miller, he had a talk with him about the title to the land, and that he then told him the plaintiff claimed he had the right to redeem the same; that he had a similar conversation with the appellant some three weeks before the sale, when he made the same statement as to the plaintiff's claim; but the witness further says that, at the time these conversations were had with the appellant, he had no knowledge that the plaintiff had executed the quitclaim deed to Miller, and he was talking about the claim which plaintiff made under the original warranty deed of 1878. The appellant denies that any such conver-

sation was had with the witness at the time stated. He
says: "I knew that under the other deed *Hadley* had the
right to redeem it, and I talked over *Hadley's* and Miller's
matters in that regard.  I did not have any conversation
with Ellis in regard to the quitclaim deed from *Hadley* to
Miller a week before I bought the lot, for I did not know
anything about it then.  About four days before I made
the purchase of Miller, I first knew that Miller had a quit-
claim deed from the plaintiff.  I examined the quitclaim
deed.  Miller showed it to me, and said he had everything
settled up with *Hadley*, and a few days after I bought the
lots; and when I purchased, I had no knowledge that
*Hadley* had any claim on them." The only other evidence
given on this question, on the part of the plaintiff, was evi-
dence tending to show that the plaintiff retained the pos-
session of the lots after the quitclaim deed was executed.
The plaintiff also testified that, on the night before Miller
sold the lots to the appellant, Miller had told him the ap-
pellant wanted to buy one of the lots, and the plaintiff
asked appellant if he wanted to buy it, and he said, " No."
" I offered it to him for $150, which he had offered me a
hundred times." There is some other evidence from which
it is claimed, on the part of the learned counsel for the re-
spondent, the court was justified in finding that the appel-
lant had notice of the plaintiff's equity in the land, viz., that
on the purchase of the property but $20 was paid, and a
mortgage given for $300.  It is said that the price was
inadequate.  The remark is claimed to have been made by
the appellant, when he was informed that *Hadley* was going
to get the land back, " that he did not care anything about
it; *Joe* [meaning the plaintiff] had no money to fight, and
he could not get it back." Although we do not think the
evidence of notice, as it appears from the whole record, was
very clearly established, yet, as the learned judge, who had
the advantage of seeing and hearing the witnesses, has

found in favor of the plaintiff, we do not feel justified in reversing his finding on that point.

We are very clear, however, that the judgment must be reversed as to that part of it which charges the appellant with $321 for the rent of the premises during the time he held possession of the same. The appellant is charged for the rent of the premises as they were after the appellant had made all his improvements thereon at a cost of several hundred dollars. There was no evidence given on the part of the plaintiff showing the rental value of the premises in the condition they were when possession was taken by the appellant; and the only evidence given on the part of the appellant was that the rental value of the premises in the condition they were when he took possession would be but a very small part of the sum allowed by the court to the plaintiff. Under the evidence in the case, we think the plaintiff is entitled to recover as rent only the rental value of the premises in the condition they were when the defendant took possession, and not the rental value with the improvements made thereon by the appellant. We think, also, the court was right in allowing the appellant the value of his improvements made before this action was commenced; and we are also of the opinion that, under the proofs in the case, the court should have allowed for the value of the improvements made up to the time the court announced its decision in the action. In estimating the value of these improvements, the value should be fixed at the sum the improvements enhanced the value of the whole premises, and not their cost, in case the cost exceeds the value which they have added to the premises. No interest should be allowed the appellant on the value of his improvements, as he has had the use of them, and, under the rule of estimating the rent he must pay the plaintiff, he will not be charged any rent for the use of his improvements. This is the rule laid down by the court in *Green v. Dixon*, 9 Wis. 532; *Blod-*

*gett v. Hitt*, 29 Wis. 169, 181; *Davis v. Louk*, 30 Wis. 308, 314; *Mickles v. Dillaye*, 17 N. Y. 80; *Fee v. Cobine*, 11 Ir. Eq. 406; and many other cases.

The plaintiff is not in the condition of the plaintiff in the case cited by the learned counsel,— *Witt v. Trustees*, 55 Wis. 376. The evidence shows that he was present when the defendant took possession under his deed, and made no objection to his taking possession or to making his improvements; nor did he then openly assert his claim to redeem the same. Under such circumstances, it would be inequitable on the part of the plaintiff to claim the improvements. The plaintiff suffered the defendant to commence making the improvements on the lots, without objection, and knowing what he was intending to do; and the defendant had expended considerable sums of money in making such contemplated improvements before any objection was made. Under this evidence it seems to us the defendant had the right to complete his contemplated improvements, after notice and objection, so as to make them useful to himself and to the plaintiff if he recovered the possession, and that, in adjusting the equities, the court should allow the defendant such sum for his improvements as they have enhanced the value of the plaintiff's property.

In the case of *Green v. Dixon, supra,* this court said: "Where one in possession really has only the rights of a mortgagee in possession, but believes himself to have the absolute title, and in good faith makes valuable improvements, he is entitled to be paid for them." Justice PAINE, who delivered the opinion in this case, quotes from and approves the rule laid down in the case of *Mickles v. Dillaye, supra.* That case was fully considered, and in a very able opinion the rule above stated was adopted by that court. We do not think the evidence shows a want of good faith on the part of the appellant in asserting his right to hold the property against the claim of the respondent, although

the circuit court has found that he was in equity charged with notice of such claim. We do not think the evidence makes out such a clear case against the defendant as to charge him with a want of good faith in asserting his claim to the property.

It is claimed by the learned counsel for the appellant that it was error to charge the defendant with the costs of this action. As the judgment must be reversed, and a new account taken of the rents to be charged to the defendant, and as to the value of the improvements to be allowed to him, we shall not consider the question of the costs, but leave that to the discretion of the circuit court in rendering a final judgment in the case. Neither will we consider the question as to whether the appellant was charged too much in the account for the old buildings he removed from the premises, as that matter can also be reconsidered in taking the account between the parties.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.