PARNELL v. GOFF *et al.*

No. 1701.    Opinion Filed March 19, 1912.

(122 Pac. 653.)

**MORTGAGES—Redemption.** Where lots in the Indian Territory were sold under a deed of trust prior to statehood, and the purchasers took possession, believing, in good faith, that they had an indefeasible title, remained in possession six months, and built a house on the lots without objection by the owner of the equity of redemption, who knew they were building and had opportunity to make objection, it was proper to require the owner of the equity of redemption to pay the purchasers the amount the lots were enhanced in value by the house placed on them, in addition to the purchase price paid at the trustee's sale and taxes, in order to redeem the property.

(Syllabus by Rosser, C.)

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by James M. Parnell against A. J. Goff and others. Judgment for defendants, and plaintiff brings error. Modified and affirmed.

*J. W. Hocker* and *Yerker E. Taylor,* for plaintiff in error.

*Cottingham & Bledsoe* and *J. B. Thompson,* for defendants in error.

Opinion by ROSSER, C.    This suit was brought prior to statehood by James M. Parnell to redeem certain lots in the town of Wynnewood from a trustee's sale under a certain deed of trust.    The purchasers at the trustee's sale took possession and built a house on the lots after the sale, and before the expiration of the time within which the mortgagor or holder of the equity of redemption had the right to redeem.    Section 4759 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, sec. 3070) allows a mortgagor to redeem property which has been sold under a mortgage any time within one year.

Eben N. Jones sold the property in controversy to Sarah F. Parnell, receiving part cash and two notes for the sum of $800 each. As security for the payment of the notes, Sarah F. Parnell, joined by her husband, executed a deed of trust to J. T. Wheeler, as trustee, conditioned that if the notes were not paid the trustee should sell the property, after having it appraised and giving notice. In the deed of trust, the Parnells agreed to insure the buildings on the lots for the benefit of the holder of the notes. Some time after purchasing the property and giving the deed of trust, Sarah F. Parnell sold it to D. L. Parnell, and D. L. Parnell assumed the payment of the notes. D. L. Parnell paid one of the notes and some interest on the other, but made default in the payment of the second note. After D. L. Parnell became the owner of the property, the building on it burned down. The building was insured; but the insurance was taken out for the benefit of the Parnells. The record does not show the amount of the insurance or when the building burned. One of the Parnells testified that Wheeler, the trustee, got some of the insurance money. Default was made in the payment of the last note. After the fire, the trustee advertised the property for sale, and it was bid in by the defendants A. J. Goff and A. E. Eskridge. At the sale, the trustee announced that the purchaser would get good title. In a few days after the sale, he executed a deed to the purchasers, and they took possession of the lots. A short time after they took possession, they began building a brick house 50x100 feet on the lots. D. L. Parnell knew that the defendants were building the house, but made no assertion of his right to redeem, and permitted the building to be finished without asserting his right. When the building was completed, or about completed, his brother, the plaintiff, came to him and suggested to him that he had a right to redeem. D. L. Parnell declined to make any effort to redeem the property, but sold his equity of redemption to the plaintiff. While the trade was pending between them, the value of the house defendants had built on the lots was discussed. Plaintiff paid the trustee the balance due on the note, and tendered to the defendants, the

purchasers of the lots, the amount they had paid, with interest. The evidence was that the lots, without improvements, were worth something like $500, and showed that the house built upon the lots by the purchasers at the mortgagee's sale was worth from four to five thousand dollars. The lower court found that the lots were worth $500, that the house built by defendants enhanced the value of the lots to the amount of $4,300, that they had paid $122.20 taxes, and that they had received rents to the amount of $275, and decreed that the plaintiff could redeem upon paying the sum of $4,647.20 within three months from the date of the decree, and adjudged that each party pay half the costs.

The principal question involved is as to whether the defendants Goff and Eskridge are entitled to be paid for the building placed upon the premises before the plaintiff can redeem; or, in other words, whether it was proper to make it a condition of redemption of the lots that the plaintiff pay the defendants Goff and Eskridge, in addition to the amount paid by them at the trustee's sale, the amount that the lots were enhanced in value by the improvements placed there by defendants.

The evidence shows that the plaintiff and his grantor, D. L. Parnell, knew that defendants were building upon the lots, and that they made no objection and gave defendants no notice of their intention to redeem. Plaintiff, as his excuse for making no claim, stated that the persons building on the lots were strangers to him. From a reading of the whole record, it is impossible to escape the conclusion that neither the plaintiff nor his grantor would have made any effort to redeem the naked lots if the house had not been built on it. There can be no doubt but that, if the defendants had allowed the lots to remain in their unimproved condition during the period allowed for redemption under the Arkansas statutes, the plaintiff would have permitted the period to expire without redeeming. When the property was destroyed, D. L. Parnell received the money for the insurance, and, although the mortgage provided that he would insure the property for the benefit of the mortgagee, and though he had failed to do that, he did not pay the proceeds to the trustee, but seemed to

proceed upon the theory that the lots were not worth the mortgage debt, and that he would not give himself any further concern with the matter. The evidence is clear that defendants, in good faith, believed they had, by their purchase at the trustee's sale, obtained an indefeasible title.

In Jones on Mortgages (6th Ed.), sec. 1128, the rule is laid down as follows:

"When the mortgagee makes permanent improvements, supposing he has acquired title by foreclosure, upon a subsequent redemption, he is allowed the value of them, especially if the mortgagor has by his action to any extent favored the mistaken belief. In like manner a purchaser at a foreclosure sale, who has made valuable improvements in the belief that he has acquired an absolute title, is entitled to be paid for them in case the premises are redeemed."

In *McSorley v. Larissa,* 100 Mass. 270, McSorley sued Larissa as assignee of the mortgagee, and certain parties to whom Larissa had conveyed a portion of the property, and who had made permanent and valuable improvements upon it. It was held that they were entitled to be reimbursed for the improvements placed upon the land. The court said:

"He that would have equity must do equity. And there is certainly no equity in allowing the plaintiff to take, without compensation, the value of improvements which Allison, a purchaser in good faith, who supposed he had good and absolute title, has made."

In *American Buttonhole, etc., Co. v. Burlington Mutual Loan Ass'n,* 68 Iowa, 326, 27 N. W. 271, the property was sold under a mortgage. The court said:

"The right of plaintiff to redeem is conceded; but the district court required him to pay for the permanent improvements, and this is the first question we are required to determine. The defendants should be regarded as mortgagees in possession, and the plaintiff as mortgagor or statutory lien creditor seeking to redeem. In such case, the plaintiff is remediless at law, and is compelled to obtain redress in equity. The general rule in equity between such parties is that the person having the right to redeem cannot be compelled to pay for permanent improvements. *Moore v. Cable,* 1 Johns. Ch. [N. Y.] 385. The rule in this case was recognized in *Montgomery v. Chadwick,* 7 Iowa, 114;

but it is said in that case that there are exceptions to the rule, and it was held that the person seeking to redeem, under the facts in that case, must pay for permanent improvements. There was a similar holding in *Mickles v. Dillaye,* 17 N. Y. 80; *Green v. Dixon,* 9 Wis. 532; *Troost v. Davis,* 31 Ind. 34; *Gillis v. Martin,* 17 N. C. 470 [25 Am. Dec. 729]; *Bacon v. Cottrell,* 13 Minn. 194 (Gil 183); *Roberts v. Fleming,* 53 Ill. 196. The grounds upon which these cases proceed is that it would be inequitable and unjust, where the party takes possession in good faith, under the belief that he is sole owner, with the consent expressed or implied, of the mortgagor, or where the latter has, for a considerable length of time, failed to assert his right to redeem, to permit this to be done, except on the condition that permanent improvements are paid for. The fact that the party in possession had constructive notice of the rights of the mortgagor or lien creditors, it has been held, is immaterial. *Mickles v. Dillaye,* before cited."

These cases hold that the constructive notice which the law gives is not such notice as will prevent the purchaser from making the improvements in good faith.

In *Hicklin v. Marco* (C. C.) 46 Fed. 424, the syllabus is as follows:

"On a bill to redeem from a purchaser at a void sale in a suit to enforce a lien of the mortgagee, or his assignee, the defendant is entitled to an allowance for the value of permanent improvements placed on the premises."

See, also, *Freichnecht v. Meyer,* 39 N. J. Eq. 551; *Poole v. Johnson,* 62 Iowa, 611, 17 N. W. 900; *Bradley v. Snyder,* 14 Ill. 263, 58 Am. Dec. 564; *Troost v. Davis,* 31 Ind. 34; *Ensign v. Batterson,* 68 Conn. 298, 36 Atl. 51; *Carroll v. Robinson,* 15 Grant's Chancery, 173; *McLaren v. Fraser,* 17 Grant's Chancery, 567; *Harper's Appeal,* 64 Pa. 315.

In *Hadley v. Stewart,* 65 Wis. 481, 27 N. W. 340, where the facts were as favorable to the mortgagor as in the case at bar, it was held that the mortgagee was entitled to the value of his improvements placed upon the mortgaged premises.

In the present case, the mortgagor had collected the insurance money after the building originally built on the lots was destroyed, and had declined or failed to pay the mortgage note. At the sale, he made no effort to bid it in, and permitted the

purchaser' at the sale to take possession and to build a house of considerable value without objection; and the fact that the defendants were strangers was not a sufficient excuse for the failure to notify them of the intention to claim a valuable right. The fact that they were strangers did not prevent the plaintiff from suing them after they had the house completed. Under these circumstances, it was not error to require the plaintiff to pay the defendants the amount which the improvements they had placed upon the lots had enhanced their value as a condition of redemption.

Plaintiff contends that defendants had no right to take possession of the lots until the expiration of one year during which they might redeem, and he relies on the case of *Wood v. Holland,* 57 Ark. 198, 21 S. W. 223, as supporting this view. If the defendants did not obtain the right of possession by their purchase until the expiration of one year from their purchase, then the estoppel against the plaintiff is all the greater. If the plaintiff or his grantor permitted them to enter when he had the right to keep them off, that fact would be strong evidence that he had abandoned any claim of a right to redeem, and they would have the right to rely on such failure to object to their exercising acts of ownership as evidence that he did not intend to make further claim to the property.

The plaintiff also assigns as error the failure of the court to make an order allowing the plaintiff a credit for the rent to accrue upon the property during the 90 days succeeding the decree, in which the plaintiff was allowed to redeem. The plaintiff was entitled to this credit, and the court should have made an order charging the defendants with the rent on the premises up to the time of redemption within the 90 days. To this extent, the decree of the lower court should be modified, and the case remanded, with instruction to the district court of Garvin county to enter judgment, allowing the plaintiff to redeem within 90 days after the judgment is there entered. The amount necessary to be paid to redeem the property should be ascertained by adding together the amount paid for the lots by the defendants,

the amount they were enhanced in value by the building erected, and the amount paid as taxes, with interest at the rate of 6 per cent. per annum on the amounts paid for the lots and for taxes from the date of their respective payments, and the amount the lots were enhanced in value from the date the building was finished, and from the amount thus ascertained deducting the fair and reasonable rental value of the property, with the house thereon, from the date of its completion until redeemed. It should there be further decreed, as in the former decree, that if plaintiff failed to make the necessary tender within 90 days that he should be forever barred. The costs of this appeal should be taxed equally against each of the parties.

By the Court: It is so ordered.